HARRY GARBEY *v.* UNITED STATES (No. 3944)[1]

---

[1] T. D. 48332.

United States Court of Customs and Patent Appeals, May 4, 1936

*Lawrence & Tuttle (George R. Tuttle* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Webster J. Oliver,* special attorney, of counsel), for the United States.

[Oral argument April 6, 1936, by Mr. Tuttle and Mr. Oliver]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is a reappraisement proceeding involving the dutiable value of a "cut but unset" 22.97 carat diamond, exported from Amsterdam, Holland, by registered mail, December 27, 1933, and entered at the port of Los Angeles, Calif., in January 1934.

The diamond was entered at a total value of $30,000, the invoice price. The local appraiser appraised its value at 3,000 guilders per carat which, it is agreed, was on the date of exportation, equivalent to a total value of $43,364.51. The importer appealed to reappraisement, and the single judge sustained the entered value. The Government thereupon appealed to the United States Customs Court, to the Third Division of which the case was assigned. The division reversed the decision of the single judge and sustained the value fixed by the local appraiser. Importer filed motion for rehearing which was denied, and the instant appeal to this court followed.

While nothing is found upon the papers so indicating, it seems to be agreed by counsel for the respective parties that the local appraiser appraised what he found to be foreign-market value, and the decision of the appellate division so states. The contention of appellant was stated by his counsel at the beginning of the trial before the single judge, as follows:

We contend that the price at which it was entered was the foreign market value and that the export value does not exceed the foreign market value. And we also intend to show that the United States value was not higher than either the foreign or the export value in the event the court should find we have not established either the foreign or the export value.

The trial judge held the entered value to be "the foreign-market value," according to the weight of the evidence, and the decision of the appellate division was "that the correctness of the appraiser's finding of value has not been overcome."

The assignments of error before us are to the effect that the appellate division erred in not finding the entered value to be the correct foreign value, as found by the single judge, although one assignment is that the division erred "In failing to find that the sale of this diamond established export value." There is no specific assignment of error upon the question of United States value, although the brief argues that if this court should be of opinion that no foreign or export value existed, there is evidence establishing United States value, such value being the same as the entered value.

The diamond involved is shown by the record to be somewhat unusual in shape. The importer in his testimony described it as follows:

This stone is of very fine quality. The objection to the stone is the length. It is excessively long and a little narrow. * * *.

Another witness on behalf of importer made a sketch of the stone, which is in the record, and also testified orally:

It is a very beautiful stone. The shape of it is not as desirable as it might be. * * * I think that some of the facets are larger than they ought to be to make the shape as perfect as a stone of this caliber should be.

It was also testified that the stone has certain "imperfections" to remove which would require cutting that would cause a loss in the weight of the stone "of from four to five carats." This latter testimony is not regarded by us as having any particular value upon the issue involved, since it must be presumed that the local appraiser was fully apprised of the condition of the stone at the time he appraised it, and that all imperfections and blemishes were taken into account in his finding of value.

The importer introduced the testimony of seven witnesses, including his own. All such witnesses were dealers in diamonds in the United States, at least two of them being importers. The Government introduced the testimony of one witness who was a diamond dealer, his business including importing diamonds. His testimony indicates that his opinion as to the value of the involved stone was sought by some of the officials who had to do with the examination of it while the question of its value was being considered by the local appraiser. The importer also introduced the affidavits of S. Genn, of Antwerp, Belgium, to whom the stone seems to have belonged, and of R. Hugo Prins, of Amsterdam, Holland, manager of "Maurits Prins N. V.", the shipper of the stone. The Government also introduced the report of a special agent.

From the opinion of the appellate division we quote the following:

In a review of all of the evidence submitted including the plaintiff's seven witnesses and one witness for the defendant, we are unable to find any evidence as to the foreign-market value of the diamond in question upon the date of exportation. None of the witnesses knew anything about the foreign market at the time of exportation. Their method of calculating the foreign market value from a value in the United States was not in accordance with law. Although they were all experts in the United States diamond market none of them had recently dealt in diamonds of the class imported herein. The special agent's report is devoid of any evidence of the value or price of such a diamond at the time of exportation thereof to the United States at which it was freely offered for sale to all purchasers in the ordinary course of trade. The affidavit of R. Hugo Prinz, the shipper, stated that in his opinion the invoice price of the stone was fair and reasonable and represented the market value at Amsterdam at the time of shipment, and S. Glenn, the owner of the stone, swore that he was glad to dispose of the stone at the invoice price, and was willing to sell it to any one at the same price. Both affidavits indicated that the market for such a diamond was dead. No offers had been received nor were made to any other prospective purchaser. It is true that the shipper and the owner of the stone have both indicated in their affidavits that the invoiced value was the market value, but from such affidavits we are not convinced that such is the freely offered price in the ordinary course of trade. On the other hand, the affidavits lead us to the view that $30,000 was a bargain price for a stone of much greater value, which was accepted in order to get it off their list, rather than a price derived from offers or sales in the ordinary course of trade. It is therefore our opinion that the correctness of the appraiser's finding of value has not been overcome.

The contentions of appellant before us are to the effect that the involved stone being an individual or unique article, its value cannot be reached by comparison with other stones; that the market value cannot be found in the usual way as by reference to price lists, catalogues, etc.; that it is established by the evidence that the ordinary meaning attached to the term "freely offered for sale to all purchasers" is not a true criterion of the market value of such a stone; that notwithstanding the appellate division found that the market was dead, and that $30,000 was accepted by the owner, it was found that the evidence did not overcome the presumption of correctness of the appraiser's finding, and that this was error.

We have quite carefully examined appellant's arguments in support of the foregoing contentions, in the light of the record. It is appreciated that difficulties are presented when unique articles of the kind which the involved stone seems to be have to be appraised. It is not easy to apply the phrase, "or similar merchandise", for the reason that in the strict sense of the term, there may not be any other diamond in existence which is similar in shape to that involved, and the shape, it is fair to assume, affects the question of price per carat as do size and weight. Application of the phrase, "freely offered for sale," likewise presents difficulties as does the phrase, "in the ordinary course of trade."

Notwithstanding the difficulties, however, appraisement must be had, and it would seem that the only feasible plan is to rely upon persons expert in valuing precious stones to arrive at a valuation which meets the terms of the statute, as closely as is humanly possible. The expert in the first instance is the local appraiser who, by the provision of section 500 (a) (1) of the Tariff Act of 1930, is required:

To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof *by all reasonable ways and means in his power*, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding. (Italics ours.)

The finding of value by the local appraiser is presumptively correct and the Tariff Act of 1930 specifically provides (section 501) that "the burden shall rest upon the party who challenges its correctness to prove otherwise."

Appellant points out that the testimony of record supports the contention as to there not being what may be called a definite offering price for unique diamonds which may be taken as a freely offered price to all purchasers, because, it is said, transactions in such merchandise are the result of bargaining, the seller frequently asking more than he is willing to take and more than he expects to obtain. This may be true, but we cannot agree that it follows, as a matter of law, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements.

Appellant has not convinced us that any error of law is present in the decision of the appellate division, and, by the terms of the statute, we are limited to the consideration of questions of law only.

The only question relating to facts which we are at liberty to consider is the question, in itself a legal one, of whether the record contains any substantial evidence to support the findings of the appellate division.

In the instant case the material finding before us is negative in character. The appellate division weighed the testimony and reached the conclusion, in effect, that appellant had failed to sustain the burden which the statute imposes of overcoming the presumption of correctness of the local appraiser's valuation. It may be remarked here that this is but one part of the burden which rests upon a party appealing to reappraisement as frequently we have had occasion to point out. Had such presumption been overcome in this case, importer would have had to go further and himself prove the correct dutiable value in order to prevail. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, and cases there cited.

In the view of the case taken by the appellate division, there was no occasion, of course, for it to take notice of what may be designated as the second part of appellant's burden.

We find no basis upon which this court would be justified in reversing the decision before us, and the same is therefore *affirmed*.